### AFFIDAVIT OF INSPECTOR MICHAEL J. CONNELLY IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Michael J. Connelly, state:

### Introduction and Agent Background

1.      I am an Inspector with the United States Postal Inspection Service (USPIS) assigned to the Boston Division, in Boston, Massachusetts.  I have been employed in this capacity since 2007.  As a Postal Inspector, I am responsible for the investigation of federal criminal offenses.  I have completed the USPIS Basic Inspector Training program in Potomac, Maryland, and I am also a Task Force Officer with the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF).  I routinely work with agents, troopers, and officers with dozens of years of experience investigating crimes involving organized criminal groups and terrorist organizations. I have received specialized training in the identification and investigation of suspicious and/or hazardous items and substances sent through the United States Mail.  I have also attended multiple trainings and courses dealing with electronic and cyber investigations as well as the investigation of weapons of mass destruction (WMD) and terrorism threats.  I have investigated and participated in the prosecution of other numerous United States Mail based threat cases involving WMDs, "white-powder" hoax letters and threats with a cyber-nexus.

2.      I am currently investigating Felix Ejiogu (age 19), Jamon Coakley-Thomason (Age 18), Eric Sequeira (age 18) and two juveniles, Juvenile 1 and Juvenile 2 (collectively the "Target Individuals") for transporting a stolen motor vehicle in interstate commerce, in violation of 18 U.S.C. § 2312; for transporting or receiving, or attempting to transport or receive, in interstate commerce an explosive with knowledge or intent that it would be used to kill, injure, or intimidate any individual or unlawfully damage or destroy any building, vehicle or other real or personal

property, in violation of 18 U.S.C. § 844(d); and for transporting in commerce an explosive or incendiary device knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2).  As further described below, I have probable cause to believe, and do in fact believe, that on or about June 2, 2020, the Target Individuals did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a 2019 grey Ford Expedition, from the Commonwealth of Massachusetts to the State of New Hampshire, knowing the same to be stolen, in violation of 18 U.S.C. § 2312.  I also have probable cause to believe, and do in fact believe, that the Target Individuals did transport in interstate commerce explosives knowing or intending that they would be used unlawfully in furtherance of a civil disorder to intimidate or injure individuals or damage property, in violation of 18 U.S.C. §§ 844(d) and 231(a)(2).

3.     This affidavit is being submitted in support of an application for a warrant to search electronic equipment, namely four (4) cellular phones (collectively "the Equipment") seized by investigators incident to the arrest of the Target Individuals on June 2, 2020.  The Equipment is in the possession of law enforcement and is more particularly described in Attachment A, which is attached hereto and incorporated herein.  I have probable cause to believe, and do in fact believe, that the Equipment contains evidence, fruits, and instrumentalities of the crimes listed above as described in Attachment B, which is attached hereto and incorporated herein.

4.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

**Relevant Legal Authority**

5.      18 U.S.C. § 2312 prohibits the transportation in interstate or foreign commerce of motor vehicles, vessels or aircraft with knowledge that the motor vehicle, vessel or aircraft was stolen.

6.      18 U.S.C. § 844(d) prohibits the transport or receipt, or the attempt to transfer or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property.   For purposes of this section, the word "explosive" means "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title , and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion." *See* 18 U.S.C. § 844(j).

7.      18 U.S.C. § 231(a)(2) prohibits the transportation in commerce of an explosive or incendiary device with knowledge or having reason to know or intending that the explosive or incendiary device will be used unlawfully in furtherance of a civil disorder.  For purposes of this section, the term "explosive or incendiary device" means "(A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick

3

composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone." *See* 18 U.S.C. § 232(5).

### Probable Cause to Believe That a Federal Crime Was Committed

8.      On May 25, 2020, George Floyd, a 46-year-old black male, died while in police custody in Minneapolis, Minnesota.   The nature and circumstances of Mr. Floyd's arrest, subsequent death, and the actions of the Minneapolis Police Department came under intense public scrutiny.   Almost immediately, violent protests erupted in Minneapolis and the surrounding communities.   And in the days since, similar protests and demonstrations have taken place in numerous cities and towns throughout the United States, including in Boston, Massachusetts. Most notably, on the evening of May 31, 2020 and into the morning of June 1, 2020, what began as a peaceful demonstration against racism and police brutality in Boston's Back Bay neighborhood devolved into widespread acts of violence, vandalism, looting and destruction of police property, including the burning of at least one police vehicle on Tremont Street.   Some protestors threw rocks, bricks and commercially-available explosives, like M-80s, at police officers.    Based on news footage of the event and information obtained from local law enforcement, others launched fireworks at police using mortar-style tubes or other similar devices. Numerous police officers were injured.   As a result, according to media reports, at least 53 people were arrested in Boston on May 31, 2020 and June 1, 2020 and charged with various criminal offenses.   Other protests and demonstrations have taken place, or are scheduled to take place, at various locations in Boston and elsewhere in Massachusetts.

9.      Shortly before 12:20 a.m. on June 1, 2020, while violent protests were still ongoing

in the Back Bay, at least four motor vehicles were stolen from a Hertz Rental Car ("Hertz") location in an underground parking garage at 30 Park Plaza in Boston.  Surveillance video from the Hertz location depicts a grey Jeep Grand Cherokee (which had been stolen previously from another rental car location) entering the underground garage at approximately 12:20 a.m.  The Jeep drove through a locked garage door and down an entrance ramp towards the underground garage.  The Jeep stopped on the ramp in front of a white sedan, which Hertz had parked on the ramp to prevent theft by blocking the exit / entrance.  At least four individuals, all of whom appear to be young males, are seen exiting the Jeep.  Several other individuals appear to follow the Jeep on foot into the garage.  Shortly thereafter, the video shows the Jeep ramming the white sedan, pushing it out of the way and clearing the entrance to the underground garage.  Then, several cars, all of which appear to be Hertz rental cars, are seen exiting the garage.  Among the cars stolen from the 30 Park Plaza garage was a grey 2019 Ford Expedition with Massachusetts registration 1NDW14 (the "Target Vehicle").

10.     At approximately 2:46 p.m. on June 2, 2020, officers from the Seabrook, New Hampshire Police Department responded to a report of stolen fireworks at Fantasy Fireworks located at 571 Lafayette Road in Seabrook, New Hampshire.  According to a Fantasy Fireworks employee who was working at the time of the incident, while speaking with a customer at the check-out counter, two black or Hispanic males ran from the store carrying a large amount of fireworks.  One of the males was wearing a dark-colored, long-sleeve Adidas jacket with multiple stripes on each sleeve, along with matching Adidas pants.

11.     According to the Fantasy Fireworks employee, after leaving the store with the stolen fireworks, the two males got into a grey SUV, which was parked immediately outside the

store's front entrance.  The SUV then drove off at a high rate of speed.  Security footage from Fantasy Fireworks confirmed that the grey SUV was the Target Vehicle, which had been reported stolen from Hertz in Boston the day before.  In addition to the two black or Hispanic males that entered the store, the security footage showed at least two other individuals in the Target Vehicle when the theft occurred.

12.     At approximately 5:00 p.m. on June 2, 2020, Troopers from the Massachusetts State Police stopped the Target Vehicle at 325 Montvale Avenue in Woburn, Massachusetts.  The vehicle was occupied by five young males, subsequently identified as the Target Individuals.  Each of the Target Individuals was taken into custody by Massachusetts State Police.  At the time of his arrest, one of the Target Individuals, Felix Ejioju, was wearing similar dark-colored Adidas pants to those worn by one of the suspects depicted on surveillance footage from inside of Fantasy Fireworks.  Another of the Target Individuals, Juvenile 1, was wearing a dark-colored, long-sleeve Adidas jacket similar to that worn by one of the Fantasy Fireworks suspects.  Juvenile 1 told Troopers that Ejioju had given him the jacket to wear because he (Juvenile 1) was cold.  In one of the pockets of the Adidas jacket was the Target Vehicle's key fob.

13.     Troopers searched the Target Vehicle incident to the arrest of the Target Individuals.  The contents of the Target Vehicle were also inventoried at the Medford State Police Barracks.  In the passenger compartment, among other items, Troopers found a tire iron, a shovel, a brick, and a crow bar.  I know that some protestors used similar items to commit acts of vandalism and violence — some aimed at law enforcement — during protests in Boston on May 31, 2020 and June 1, 2020.  I also know that at least two protests were scheduled in Boston for the evening of June 2, 2020 (around the same time as the Target Vehicle would have entered the Boston area

had it not been stopped), and that one of the protests was expected to involve more than one thousand people.   Additionally, Troopers also found numerous firecrackers inside the Target Vehicle, including the following:

a.   1 package of M-80 brand super charged firecrackers;
b.   1 package of Cherry Bomb brand flash salute super charged firecrackers;
c.   1 package of American Chief BP 2919 reloadable artillery shells (opened);
d.   1 package of American HD Artillary Attack 735891-36 shells;
e.   1 package of Garnet & Black 16 shot fireworks;
f.   1 package of American HD the Reaper 60 gram canister shells;
g.   1 package of TNT Night Rampage fireworks; and
h.   2 packages of assorted Roman Candles.

According to employees of Fantasy Fireworks, these are the same types of fireworks stolen from its Seabrook store on June 2, 2020.  I know that some protestors used similar types of firecrackers, including M-80s and others (like item d) that are fired using a mortar-style tube, against law enforcement officers during protests in Boston on May 31, 2020 and June 1, 2020.[1]

14.    In addition, Troopers also found North Face brand hooded sweatshirts, a North Face price tag, and a North Face branded clothes hanger similar to those seen in North Face retail stores. Open source information indicates that the North Face retail store located at 326 Newbury Street had its door shattered and was looted either during the evening of May 31, 2020 or the early morning hours of June 1, 2020.

15.    Massachusetts State Police Troopers searched each of the Target Individuals

---

[1] I know from my experience and from speaking with other law enforcement officers that firecrackers typically consist of a plastic or paper body filled with explosive powders or chemicals which are activated by a user-initiated fuse. Roman candles are fireworks that are typically user-initiated, fuse lit tubes that shoot multiple balls of chemical reactions.   The chemical reaction can exceed 4500 degrees Fahrenheit.  Mortar type fireworks are typically user-initiated fuse lit shells which are shot out of tubes and are typically made of paper or plastic and filled with explosive powders and chemicals.

incident to arrest on June 2, 2020.  Felix Ejiogu was found in possession of a red Apple iPhone with a black case; Jamon Coakley-Thomason was found in possession of a grey Apple iPhone with a multi-colored case; and Juvenile 1 was found in possession of a black Apple iPhone with a black case.  Another cellular phone, a silver Apple iPhone with a clear case, was discovered by Troopers inside of the Target Vehicle alongside Eric Sequiera's school identification.  While the Target Individuals were being booked at the Medford State Police barracks, three of the phones appeared to be receiving numerous calls and/or text messages.  (The remaining phone, Juvenile 1's phone, was powered off because the battery had expired.)  The phones – the Equipment – are currently in the possession of the Federal Bureau of Investigation, and are being stored at its facilities, as described in Attachment A.

**Probable Cause to Believe That The Equipment
Contains Evidence, Fruits, and Instrumentalities**

16.     As discussed above, the Equipment is currently being stored by investigators at their facilities as described in Attachment A.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

17.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment, including cellular phones, to carry out, communicate about, and store records regarding their daily activities.  These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities;

arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.  In particular, based on my training and experience, individuals who commit crimes will often communicate via cellular phone, or the mobile communications applications stored therein, with accomplices and co-conspirators about their crimes.  Based on my training and experience, such communications often include discussions about planning a crime, logistics while committing the crime, or concealing one's involvement after a crime has been committed.  Here, where the crimes under investigation involve numerous individuals, the Equipment may contain evidence concerning, among other things, whether or not the Target Individuals intended to use the stolen firecrackers and explosives against police, police property, and/or other individuals in furtherance of civil disorder in Massachusetts or elsewhere.

18.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers.  The Equipment, all Apple iPhones, are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and the location of the person who possessed or used the device over a period of time.  A search of the Equipment, therefore, will likely reveal evidence concerning the movement of the Target Individuals between May 31, 2020 and June 2,

2020, as well as their planned activities for the evening of June 2, 2020.

19.     Additionally, I have been advised by the arresting officers that three of the target phones were receiving numerous text messages, calls, and other notifications after the Target Individuals were arrested.  From my training and experience, this suggests that associates and/or potentially co-conspirators may have been trying to connect with the Target Individuals about protests that evening.

20.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records and information of the type described in Attachment B on mobile phones.

21.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet.  This is true because:

    a.     Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

    b.     Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.     Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information,

but users typically do not erase or delete this evidence because special software is typically required for that task.

d.    Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

## CONCLUSION

21.    Based on the information described above, I have probable cause to believe that Felix Ejiogu, Jamon Coakley-Thomason, Eric Sequeira, Juvenile 1 and Juvenile 2 have violated 18 U.S.C. §§ 231(a)(2), 844(d) and 2312.

22.    Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the Equipment described in Attachment A.


Sworn to under the pains and penalties of perjury,

/s/ Michael J. Connelly
_____
Michael J. Connelly
United States Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me via telephone on June 5, 2020,

_____
M. Page Kelley
United States Magistrate Judge

11